

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MIGUEL MENDOZA, | § | No. 08-17-00230-CR |
| Appellant, | § | Appeal from the |
| v. | § | 41st District Court |
| | § | |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 20140D02819) |
| | § | |

## O P I N I O N

A jury found Miguel Mendoza, Appellant here, guilty of aggravated sexual assault of a child and indecency with a child. He was sentenced to thirty-six years' on the sexual assault and ten years confinement on the indecency count, to be served concurrently, along with a $5,000 fine for each offense. His appeal effectively raises four arguments: (1) whether entries in a therapist and mental health facility's records are "testimonial" and thus trigger the Confrontation Clause of the Sixth Amendment; (2) whether he was entitled to jury instructions that would have commented on those same records; (3) whether school records improperly bolstered the complaining witness's character and were thus inadmissible; and (4) whether the evidence supports the verdict. We conclude that his complaints lack merit and affirm the judgment below.

## BACKGROUND

In 2008, Michelle L. separated from her husband. By that time, the couple had three girls

ranging in age from six to eleven. The complainant in this case, Y.L., was the oldest. Soon after her husband moved out, Michelle met Appellant at their workplace. The two started dating in July or August of 2008. By August or September, Michelle had found a new house to live in, but it needed repairs. Appellant volunteered to help with the repairs, and he began staying over at the house, at least on weekends.

In its indictment, the State alleged that on one of these weekends Appellant committed an aggravated sexual assault on Y.L. by placing his sexual organ in her mouth. The State also alleged in the second count of the indictment that Appellant committed indecency with Y.L. by touching her breast. In the trial of this case, Y.L. described those events in more detail. She awoke one morning and found that her mother and sisters had left for the store, leaving her and Appellant alone in the house. She and Appellant were talking when "all of a sudden things started to get weird." She testified that he unzipped his jeans and pulled out his penis. He pushed her down to her knees and he told her to open her mouth. He then pushed her head onto his penis. When he was done, he told her not to tell anyone.

Y.L. also testified that for a period of time Appellant would come into her room every night purportedly to say "good night" but would instead pull up her tank top and start licking her breasts. She described additional behavior not covered by the indictment. Y.L. had her own room which was across a hallway from the master bedroom where Appellant slept. She testified that Appellant would walk around that room in his boxers with his penis out in plain sight and would make eye contact with her. Another time, he took her into the master bedroom, took off her top, and asked to take pictures. Finally, one time while she was driving with Appellant to a restaurant, she testified that he put her hand in his lap and said, "You know where to put it."

This behavior, however, lasted only about a month and after that, Appellant never touched

2

or acted inappropriately around Y.L. again. Y.L. was certain that these events took place just before she started sixth grade, which would have been September 2008. Appellant eventually moved into the house full-time and stayed there until 2011.

Y.L. did not make an immediate outcry. Rather, she testified that in 2011 while watching a movie that had a scene with an older man touching a younger girl, she got upset and ran to her room. Her mother followed her, and at that time Y.L. told Michelle, but only in general terms, that Appellant had "touched" her. Michelle immediately called and confronted Appellant on the phone; Y.L. could overhear him deny that he did anything wrong. Nonetheless, Michelle testified that she told Appellant to vacate the house, which he did. Michelle did not press her daughter for any details of the event, nor did she report the matter to the police. And Michelle conceded at trial that she did not initially believe Y.L. because all her daughters were going through the trauma of the divorce from their biological father and "were acting out."

Sometime after this first out-cry, Appellant came to the house to take everyone out to dinner. The record was disputed whether the evening out was pre-arranged, or Appellant just showed up. But upon seeing or hearing Appellant at the door, Y.L. went to the bathroom and began crying. Michelle was unable to console her. Appellant then told Michelle that he would leave, and they could go out another time. Michelle also began seeing changes in Y.L.'s behavior, including school absences, a lack of friends, and refusing to come out of her room. Michelle never again dated Appellant. At trial, Michelle testified that she now believes her daughter.

Y.L. made another outcry to a school counselor in February of 2013. By that time, Y.L. was a freshman in high school. While in tears in a counselor's office, she stated that she wanted to hurt herself "because I felt like nobody wanted to listen to me. Nobody wanted to believe me. And I felt like my mom was just ignoring me." After telling the counselor that she wanted to end

3

her life, the counselor contacted the Texas Department of Child Protective Services (CPS); the school also contacted Y.L.'s mother. On the school's referral, later that year Y.L. saw a behavioral counselor, Esther Monty, LPC. Ms. Monty in turn referred Y.L. to an in-patient psychiatric facility, Peak Behavioral Health Services (Peak Behavioral), where she was admitted for nine days in the fall of 2013.

The police became involved in September 2013, and the State indicted Appellant in June 2014. The case did not come to trial until October 2017. By that time Y.L. was twenty-years' old. As we note above, the jury found Appellant guilty under both counts. He raises essentially four issues on appeal. In two related complaints, he challenges the admission of the records for Esther Monty and Peak Behavioral Center. Next, he claims that the trial court erred in refusing several tendered instructions that would have told the jury how to consider doctor, counselor, therapist, and mental health records. Appellant also complains that Y.L.'s school records were inappropriately admitted. Finally he claims that the evidence is legally insufficient to support the verdict.[1]

## CONFRONTATION CLAUSE

In his first two issues, Appellant complains that the trial court admitted two sets of records into evidence in derogation of the Confrontation Clause to the Sixth Amendment. The first set (State's Exhibit 2) are the records of Esther Monty, LPC.[2] Y.L. saw Esther Monty from September

---

[1] The actual issue as stated in the Appellant's table of authorities reads as follows: "The trial court erred in failing to safeguard due process rights by ensuring the rationality of the fact finder when it admitted factually and legally insufficient evidence." In the text of the brief, however, the issue is stated differently and claims "a rationale trier of fact could not have found that the State proved all essential elements of the crime beyond a reasonable doubt" because the evidence is "legally and factually insufficient." We treat this as a challenge to the legal sufficiency of the evidence, which is the only applicable standard in Texas. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010).

[2] LPC stands for Licensed Professional Counselor and denotes one who "offers to provide professional counseling services" with the representation that they are "licensed and trained, experienced, or expert in counseling[.]" TEX.OCC.CODE ANN. § 503.002(4)(a).

4

10, 2013 to November 22, 2013. In the initial assessment, Y.L. answered "yes" to the question of whether she had ever been abused by someone outside of the family. Y.L. identified Appellant by name as the abuser but declined to discuss any details. Ms. Monty's diagnostic impression includes "sexual abuse of child victim" and she immediately referred Y.L. to a psychiatric hospital in order to stabilize a mood anxiety, noting the risk for suicide. After Y.L.'s release from the hospital, Ms. Monty continued to see Y.L. for anxiety and depression.

The second set of records (State's Exhibit 3) are from Peak Behavioral. Y.L. was admitted to Peak Behavioral's facility from September 16, 2013 to September 25, 2013. The admitting diagnosis included "major depression, recurrent, severe with post-traumatic stress disorder, chronic sleep disorder due to gen med condition." The records--spanning some 205 pages--at several junctures recite Y.L.'s history to include "molestation of 5 years ago by her mother's boyfriend" and "fondling as well as force oral sex[.]" One entry identifies Appellant by name as the molester.

Appellant objected to the records under both hearsay and the 6th Amendment's Confrontation Clause. Neither Esther Monty nor any sponsoring witness from Peak Behavioral testified at trial. Rather, the records were proved up by affidavits establishing them as business records. The State served notice of its intent to offer the records under TEX.R.EVID. 902(10) well in advance of trial. The trial court overruled both objections, and Appellant advances only the Confrontation Clause objection on appeal.

## Applicable Law

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend VI. That would mean, for instance, the State might be precluded from playing at trial a tape-recorded statement of a witness that the accused

5

had no chance to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 38 (2004). It might also prevent the State from using the laboratory report of an expert chemist retained by the State to prove that a substance was illegal, absent the defendant's ability to cross examine the chemist. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). Stated more precisely, an accused's right to confrontation under the Sixth Amendment is violated when a witness is permitted to relate out-of-court "testimonial" hearsay statements unless the declarant is unavailable, and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 59; *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex.Crim.App. 2008). The right of confrontation is a "bedrock procedural guarantee," that applies to both federal and state prosecutions. *Crawford*, 541 U.S. at 42.

Yet as explained by the Court in *Crawford*, an out-of-court statement must be "testimonial" in nature to implicate the Confrontation Clause. *Crawford*, 541 U.S. at 68. "[The Clause] applies to 'witnesses' against the accused--in other words, those who 'bear testimony.'" *Crawford*, 541 U.S. at 51, *quoting* 2 N. Webster, An American Dictionary of the English Language (1828). Non-testimonial statements do not implicate the Sixth Amendment, and the trial court here specifically admitted Ms. Monty and Peak Behavioral's records because they are non-testimonial. *Melendez-Diaz*, 557 U.S. at 324 ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because--having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial--they are not testimonial.").

*Crawford* did not provide a comprehensive definition for what is "testimonial," but it does provide several examples: "*ex parte* in-court testimony or its functional equivalent . . . extrajudicial statements . . . contained in formalized testimonial materials" such as "prior testimony

6

at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations." 541 U.S. at 51, 68. The Texas Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would reasonably expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex.Crim.App. 2010). More recently, the U.S. Supreme Court has noted: "[i]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 135 S.Ct. 2173, 2180 (2015), *quoting Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

Once an objection is made based on *Crawford*, the proponent bears the burden to demonstrate its admissibility. *De La Paz*, 273 S.W.3d at 680-81. We review *de novo* the trial court's ruling admitting evidence over a confrontation objection. *Wall v. State*, 184 S.W.3d 730, 742 (Tex.Crim.App. 2006).

### Preservation

At the outset, the State contends that Appellant forfeited any objection to the Peak Behavioral records because the Confrontation Clause objection was made only after they were admitted. Both Exhibit Two and Three were discussed outside the presence of the jury. Appellant initially urged only a hearsay objection to the Peak Behavioral records. He conceded they fell within a "medical purposes" exception under *Crawford* that we discuss *infra*. But immediately after the trial court admitted those records, Appellant's counsel then stated "[w]e would object to

7

confrontation as to all of them[.]"

An objection must be made as soon as the basis for the objection becomes apparent. TEX.R.EVID. 103(a)(1); *London v. State*, 490 S.W.3d 503, 507 (Tex.Crim.App. 2016). Ordinarily, this is before the trial court admits the evidence. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991). We face here, however, the somewhat unique situation that the *Crawford* objection was made immediately after the trial court admitted the exhibit. The entire colloquy took place outside the presence of the jury and thus at the time the objection was made, the admitted exhibit was not yet published to the jury, and no witness testified about it. In the several cases where post-admission objections have been found untimely, there is often mention of a delay between the admission and late objection, with publication to the jury, or witness testimony about the exhibit.[3] Ultimately, we are persuaded by the language from *Lankston v. State* that "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him *at a time when the trial court is in a proper position to do something about it*." [Emphasis added]. 827 S.W.2d 907, 909 (Tex.Crim.App. 1992). The State does not contest that Appellant made a *Crawford* objection. And while outside the presence of the jury, and before any witness had testified about it, the trial judge could have reconsidered the admission on *Crawford* grounds. We decline to find forfeiture on this record. *See Johnson v. State*, 747 S.W.2d 451, 453 (Tex.App.-

---

[3] *See e.g. Turner v. State*, 642 S.W.2d 216, 217 (Tex.App.--Houston [14th Dist.] 1982, no pet.)(objection to several exhibits came after witness testified extensively about them); *Kirkpatrick v. State*, No. 08-14-00255-CR, 2016 WL 6092961, at *5 (Tex.App.--El Paso Oct. 19, 2016, pet. ref'd)(not designated for publication)(finding waiver when objection to several exhibits was made the day after they were admitted); *Sanchez v. State*, No. 05-99-01747-CR, 2001 WL 243789, at *2 (Tex.App.--Dallas Mar. 13, 2001, no pet.)(not designated for publication)(objection made only after witness testified at length about admitted exhibits); *Bunyard v. Garza*, No. 13-98-663-CV, 2000 WL 35729372, at *3 (Tex.App.--Corpus Christi July 20, 2000, no pet.)(not designated for publication)(an objection made one full day after the admission of testimony was not timely and results in waiver); *Joiner v. State*, No. 05-90-01495-CR, 1995 WL 500304, at *8 (Tex.App.--Dallas Aug. 23, 1995, no pet.)(not designated for publication)(waiver of hearsay objection made after the trial judge had admitted statement and it was read out loud to jury).

8

-Houston [14th Dist.] 1988, pet. ref'd)(finding objection to videotape was timely when it was made after admission of exhibit but before it was played to the jury).

The State also urges a forfeiture claim based on Appellant's failure to point out which of the specific statements within the 19 pages of Ms. Monty's record, or the 205 pages of the Peak Behavioral record, violate the Confrontation Clause. Generally, "[w]hen an exhibit contains both admissible and inadmissible evidence, the objection must specifically refer to the challenged material to apprise the trial court of the exact objection." *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex.Crim.App. 1995)(so holding for videotape, of which only some portions were objectionable); *Williams v. State*, 927 S.W.2d 752, 760 (Tex.App.--El Paso 1996, pet. ref'd)(same for various court filings, and orders). This rule would seem to conflict, however, with the shifting burden rule from *De La Paz* that requires the State to justify the admission once the *Crawford* objection is raised. *De La Paz,* 273 S.W.3d at 680-81. We also note that the two exhibits in our record contain colored tabs that appear to correspond to the more significant entries. On this record, we decline to reach the State's second forfeiture issue.

## Application

Nonetheless, we find no error in admission of the exhibits. Here, we deal with health care provider records. In a footnote in *Melendez-Diaz*, the U.S. Supreme Court suggests that medical records created for treatment purposes are not "testimonial" within the meaning of the Sixth Amendment. *Melendez-Diaz*, 557 U.S. at 312 n.2 (in distinguishing several cases, the footnote states that they "are simply irrelevant, since they involved medical reports created for treatment purposes, which would not be testimonial under our decision today."). Yet importantly, the Court had reserved the question of whether statements to non-law enforcement actors could ever implicate the Confrontation Clause. *Bryant*, 562 U.S. at 357 n.3; *Davis v. Washington*, 547 U.S.

9

813, 823 n.2 (2006). The Court more squarely addressed that question in *Ohio v. Clark*, 135 S.Ct. 2181 (2015)("We are therefore presented with the question we have repeatedly reserved: whether statements to persons other than law enforcement officers are subject to the Confrontation Clause."). In *Clark*, a three-year-old child presented at a pre-school with multiple bruises. *Id.* at 2178. Upon questioning by his teachers, he implicated the defendant as the person who inflicting the injuries. *Id.* The prosecution used the teachers' statements at trial to obtain a conviction for injury to the child. *Id.* The child did not testify. *Id.*

The Court first restated its "primary purpose" test whereby "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 2179-80*, quoting Hammon v. Indiana,* 547 U.S. 813, 822 (2006). And the Court noted that an emergency was but one factor, and that "there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony." [Emphasis in orig.]. *Clark*, 135 S.Ct. at 2180, *quoting Bryant*, 562 U.S. at 358.

Applying this rationale to non-police actors, the Court acknowledged that "at least some statements to individuals who are not law enforcement officers could conceivably raise confrontation concerns" and it declined to adopt a "categorical rule" exempting all such statement from the Sixth Amendment's reach. *Id.* The Court also noted, however, "such statements are much less likely to be testimonial than statements to law enforcement officers." *Id.* And based on a number of factors found in it its record, the Court concluded the child's statements were non-

10

testimonial and admissible. *Id.* For much the same reason, we reach the same conclusion here.

The teachers in *Clark* questioned the child in an emergent situation. They needed to determine the source of his bruising to know whether it was safe to release the child to his guardian at the end of the day. *Clark*, 135 S.Ct. at 2181. Similarly, Y.L. was referred to Ms. Monty based on her threatening self-harm. In the initial session, Ms. Monty noted Y.L.'s suicidal ideations, and referred her to a psychiatric hospital. The admitting diagnosis at Peak Behavioral also noted the potential for self-harm and suicidal ideations. Thus the records themselves reflect a primary purpose of treating a young person with depression, anxiety, and suicidal ideations, as distinct from developing testimony for a criminal case. And just as the teachers in *Clark*'s primary purpose was to protect the child, we see no indication that the providers here were not similarly focused on Y.L.'s mental health. *See Clark*, 135 S.Ct. at 2181 ("There is no indication that the primary purpose of the conversation was to gather evidence for Clark's prosecution. On the contrary, it is clear that the first objective was to protect [the child].").

The *Clark* court also focused on the lack of any indication the teachers were part of a police investigation. While the Court did not categorically exclude statements to individuals who are not law enforcement officers from Sixth Amendment inquiry, the fact that the child's statements were made to a teacher was "highly relevant." *Id.* at 2182. "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Id.* Here, there is no apparent connection between Ms. Monty or Peak Behavioral and the police. Y.L. was referred to Ms. Monty through her school. Ms. Monty made the referral to Peak Behavioral. The detective assigned to this case opened his file on September 27, 2013, which was seventeen days after Y.L. had first seen Ms. Monty and two days after she was released from Peak Behavioral. The detective did not

11

talk to Y.L. until almost a month later on October 25, 2013. There is no indication that either Ms. Monty or Peak Behavioral contacted the police.[4]

Our conclusion here is also consistent with several pre-*Clark* Texas cases that have held entries in medical records generated for the purpose of treating a patient are non-testimonial in the *Crawford* context. *See Berkley v. State*, 298 S.W.3d 712, 715 (Tex.App.--San Antonio 2009, pet. ref'd)("Because there was evidence before the court that the purpose of the report was to render medical treatment to the complainant, and this evidence went unchallenged, we hold the trial court did not err in admitting the nurse's report of the examination."); *see also Ervin v. State*, No. 08-15-00025-CR, 2017 WL 3614237, at *11 (Tex.App.--El Paso Aug. 23, 2017, pet. ref'd)(not designated for publication)(collecting cases for proposition that when "a patient gives a verbal history to a sexual assault nurse examiner or other medical professional during a sexual assault exam for the purpose of receiving medical treatment, the history is not considered testimonial within the context of *Crawford.*"); *Herrera v. State*, No. 08-11-00193-CR, 2013 WL 4859311, at *3 (Tex.App.--El Paso Sept. 11, 2013), *pet ref'd*, 424 S.W.3d 52 (2014)(Cochran, J., concurring), *cert. denied*, 135 S.Ct. 98 (2014)(statement by elderly rape victim to SANE nurse and counselor were non-testimonial).

More specifically, several of our sister courts of appeals have concluded that therapist and counseling records can also be non-testimonial. In *Lollis v. State,* 232 S.W.3d 803 (Tex.App.--Texarkana 2007, pet. ref'd), the court found that statements made by a five and a seven-year-old to a licensed counselor were nontestimonial because the statements were made "in the course of treatment to deal with behavioral problems and abuse issues." *Id.* at 808. The court collected several authorities for the "discernible pattern" that statements are testimonial when "a forensic or

---

[4] Peak Behavioral did note it contacted CPS regarding possible neglect by Y.L.'s mother. Monty's records reference that Y.L. and her mother completed a police report.

12

investigatory motive predominates" but the opposite is true when "when therapeutic or healing motive predominate[.]" *Id.* at 807. The court concluded:

> The evidence suggests that Clark's regular counseling sessions with these three children were intended primarily as therapy to assist the children in recovering from abusive experiences. The alternative reading—that the sessions constituted a long and single-minded effort by the State to obtain hearsay testimony—seems strained and is contrary to the evidence. We conclude, as apparently did the trial court, that, from the standpoint of either Clark or the State, this relationship was primarily one of counseling rather than one of trial preparation. Also, there is no evidence that, from the perspective of the children, the ongoing relationship with Clark was anything but counseling. And that is the proper perspective from which we view the context of the statements.

*Id.* at 808-09; *see also Tijerina v. State*, No. 13-11-00430-CR, 2012 WL 3525632, at *9 (Tex.App.--Corpus Christi Aug. 16, 2012, no pet.)(mem. op., not designated for publication)(statements made in therapy session was not testimonial, the court noting the session was not part of criminal investigation, the therapist did not immediately report her findings to the police, and the primary purpose of the session was counseling rather than trial preparation).

No doubt, the State carried the burden to demonstrate the statements in the records were non-testimonial. *De La Paz,* 273 S.W.3d at 680-81. We think it did so, partly through the testimony of Y.L. and her mother who explained the origins of the referrals to Ms. Monty and Peak Behavioral. The records themselves also raise an inference that the providers were treating a medical/psychiatric condition. Ms. Monty's "Psychosocial Evaluation" form contains a specific diagnostic impression coded to the Diagnostic Statistical Manual of Mental Disorders-IV (DSM-IV).[5] Her subsequent "Progress Note" document Y.L.'s symptoms (anxiety and depression) and contains a pre-printed list of possible "Treatments/interventions/techniques" that might be available. Likewise, the Peak Behavioral records contain a DSM-IV diagnosis, along with a

---

[5] The DSM-IV, authored by the American Psychiatric Association, reflects at least a "consensus about the classification and diagnosis of mental disorders derived at the time of its initial publication." *Clark v. Arizona*, 548 U.S. 735, 774 (2006), *quoting* Diagnostic and Statistical Manual of Mental Disorders xxxiii (4th ed. text rev. 2000).

discharge summary documenting a history, hospital course, medication record, and aftercare plan, all noted by a physician.

Appellant's primary argument is that the records do not reflect a therapeutic or treatment purpose, but rather one for diagnoses of sexual abuse. It is axiomatic, however, that a health care provider must first make a diagnosis to determine what might be an appropriate treatment. An orthopedist diagnoses a broken bone before setting it. An oncologist diagnoses cancer before ordering chemotherapy. And in the psychiatric sphere, providers generally diagnose conditions based on the most current version of the DSM, as reflected in both Ms. Monty and Peak Behavioral's records. Nor would it be unusual for those providers to inquire about the relationship of the person committing the sexual assault to gauge the nature of the condition or the presence of a continuing threat. *See e.g., Bargas v. State*, 252 S.W.3d 876, 896 (Tex.App.--Houston [14th Dist.] 2008, no pet.)(identity of child abuser medically relevant because treatment could include removing child from abusive environment); *Beheler v. State*, 3 S.W.3d 182, 189 (Tex.App.--Fort Worth 1999, pet. ref'd)(same); *Trevizo v. State*, No. 08-12-0063-CR, 2014 WL 260591, at \*7 (Tex.App.--El Paso Jan. 22, 2014, no pet.)(not designated for publication)(same).

Because Ms. Monty and Peak Behavioral records are non-testimonial, we overrule Issues One and Two.

## CHARGE OBJECTIONS

In his third issue, Appellant complains that the trial court failed to include three tendered instructions that would have informed the jury how they should view Ms. Monty and Peak Behavioral's records. The instructions relate to whether counselors, therapists, nurses, or mental health professionals are qualified to diagnose sexual abuse or symptoms related to that diagnosis,[6]

---

[6] Appellant's first requested jury instructions reads:

14

whether they can assess credibility,[7] and how the jury should view the entries in the records.[8]

## Standard of Review

We review charge error under a two-pronged test. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(opn. on reh'g). First, we must determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). Second, if error exists, we then must evaluate the harm caused by the error. *Id.* If, as here, the error was preserved, we review for "some harm." *Almanza*, 686 S.W.2d at 171. We must reverse "if the error is calculated to injure the rights of the defendant, which means no more than that there must be some harm to the accused from the error." [Internal quotes omitted]. *Id.*

## Application

The State offers a number of reasons we should reject this issue. We need address only one--the proposed instructions would improperly comment on the weight of the evidence.

By statute, the trial court must give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing

---

> Doctors, Counselors, Therapists, Nurses, and other Mental Health Professionals cannot determine or diagnose whether a Patient has been sexually abused or not. Additionally, these Mental Health Professionals cannot determine or diagnose that any symptom or pattern of symptoms such as nightmares, depression, anxiety, diminished sleep, or whatever was caused by the Patient being sexually abused. Such diagnosis or determinations are simply beyond the abilities of Mental Health Professionals to make.

[7] Appellant's second requested jury instructions reads:

> Doctors, Counselors, Therapists, Nurses, and other Mental Health Professionals cannot determine the credibility of a particular Patient asserting that he or she was sexually abused. Determining the credibility of a particular Patient is simply beyond the abilities of a Mental Health Professional to make.

[8] Appellant's third requested jury instructions reads:

> Mental Health Records often include information which is obtained from the Patient or from another Mental Health Professionals who in turn obtained the information from the Patient as medical history. This information from the Patient is simply accepted face value without a judgment as to the credibility of the Patient.

15

up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX.CODE CRIM.PROC.ANN. art. 36.14; *see also* TEX.CODE CRIM.PROC.ANN. art. 38.05 ("nor shall [the judge], at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case."). Texas empanels juries as the exclusive judges of the facts proved and of the weight to be given testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex.Crim.App. 2008). Accordingly, "Texas courts are forbidden from instructing the jury on any presumption or evidentiary sufficiency rule that does not have a statutory basis." *Brown v. State*, 122 S.W.3d 794, 799 (Tex.Crim.App. 2003).

There are three exceptions to this rule. *Bartlett,* 270 S.W.3d at 151; *see also* TEX.CODE CRIM.PROC.ANN. art. 38.04. First, when the law so directs, the trial court may specifically instruct the jury to attach a certain degree of weight, or only a particular or limited significance, to a specific category or item of evidence. *Bartlett,* 270 S.W.3d at 151 (citing the statutory accomplice witness rule in Article 38.14 as an example). Second, the Legislature has expressly required the trial court to call particular attention to specific evidence in the jury charge when the law specifically identifies it as a predicate fact from which a jury may presume the existence of an ultimate or elemental fact. *Id.*, (citing as an example the statutory rule that recklessness is presumed if the actor knowingly points a firearm at or in the direction of another person). Third, the trial court may instruct the jury with respect to evidence that is admissible contingent upon certain predicate facts that the jury must decide. *Id.*, (citing as example the ability of judge to instruct the jury that specific evidence cannot be considered if it was illegally obtained).

"Outside of these statutorily recognized exceptions, a trial court should avoid any allusion in the jury charge to a particular fact in evidence, as the jury might construe this as judicial

16

endorsement or imprimatur." *Id*. at 150. Similarly, the trial court should not give an instruction that "singles out a specific type of evidence" and invites the jury to pay particular attention to it. *See Brown,* 122 S.W.3d at 801. That kind of instruction impinges upon the independence of the jury in its role as the trier of fact. *Bartlett,* 270 S.W.3d at 151-52; *see also Kirsch v. State*, 357 S.W.3d 645, 651 (Tex.Crim.App. 2012)("An instruction, albeit facially neutral and legally accurate, may nevertheless constitute an improper comment on the weight of the evidence."). Non-statutory instructions generally have no place in the charge. *Celis v. State*, 416 S.W.3d 419, 433 (Tex.Crim.App. 2013).

Appellant's tendered instructions fall within none of the three exceptions. One instruction effectively tells the jury to ignore part of the professionals' diagnosis because they are unqualified to render the diagnosis. A second instruction states that the professionals are incapable of making any credibility determinations. The third denigrates the substance of the history portion of a medical record. Appellant cites to no statute or case law requiring these instructions. At most, Appellant directs us to authority that expert witnesses cannot testify that a particular child witness is truthful. *Yount v. State*, 872 S.W.2d 706, 712 (Tex.Crim.App. 1993). Yet, we do not find that assertion made in either Ms. Monty or Peak Behavioral records, and if it had been, the remedy would have been to object to that specific entry. To be sure, the records recite a history, no doubt derived from Y.L., who appeared at trial and was cross-examined. And it may be true that "[p]sychiatrists are trained to accept facts provided by their patients, not to act as judges of patients' credibility." *Id.* at 710, *quoting State v. Moran*, 151 Ariz. 378, 728 P.2d 248, 255 (1986). While such an argument might be the proper subject of cross-examination or witness testimony, it has no place in the judge's instructions to the jury. *See Brown*, 122 S.W.3d at 797 (stating that the advocates, rather than the judge, have the task of producing the evidence, arguing its significance,

17

and pointing out the logical inferences that flow from it); *Alexander v. State*, No. 08-14-00102-CR, 2018 WL 1224872, at \*6 (Tex.App.--El Paso Mar. 9, 2018, pet. ref'd)(not designated for publication)(upholding refusal to submit instruction on how a general contractor is required to keep funds segregated in accounts).

We overrule Issue Three.

## ADMISSION OF SCHOOL RECORDS

In his fourth issue, Appellant complains of the admission of Y.L.'s school records for the 2013-2014 school year. The eighteen-page exhibit includes what appears to be health and immunization records. The exhibit also includes grade reports, class schedules, and attendance information. These records reflect that Y.L. missed eight days in the 2013-14 school year for illness and doctors' appointments. She scored As, Bs, and Cs in her class work.

Appellant objected at trial to the relevance of the records, stating "We're not contesting that she was a good student or anything. And it's a matter -- it's just not a contested issue in this case." The State responded that the records were offered to rebut any claim that Y.L. made the allegations up because she was doing poorly or had behavioral issues in school. By the time that the records were offered and admitted, the State had already elicited through testimony of the school counselor, and without objection, that Y.L. was an "average student . . . She was actually a good student." The counselor also testified Y.L. had no discipline or attendance problems. Later in the trial, Y.L.'s mother testified to just the opposite--that Y.L. was having a hard time at school and her grades were dropping.

As we understand the argument on appeal, Appellant claims the exhibit fails the relevance test and is an improper attempt to show Y.L.'s good character. Appellant posits on appeal that contextual background information is admissible under a two-part test: (1) it must be relevant

18

under Tex.R.Evid. 401; and (2) it must fall within an exception to the general prohibition in Rule 404 of using character evidence to prove that on a particular occasion a person acted in conformity with the character or trait. *See Rogers v. State*, 853 S.W.2d 29, 32 (Tex.Crim.App. 1993)(discussing background contextual evidence and the two part-test). The main thrust of Appellant's argument is that the school records improperly bolster Y.L.'s character by showing she was a good student.

## Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003). Moreover, "[i]f the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment." *Page v. State*, 213 S.W.3d 332, 337 (Tex.Crim.App. 2006), *quoting Sauceda v. State,* 129 S.W.3d 116, 120 (Tex.Crim.App. 2004).

Finally, evidentiary errors generally constitute non-constitutional error which we review under TEX.R.APP.P. 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex.Crim.App. 2007). We must disregard evidentiary error which does not affect an appellant's substantial rights. TEX.R.APP.P. 44.2(b).

## Preservation

The State first contends that the Rule 404 character issue was not raised below and is not preserved for review. To preserve error, a party must object and state "the grounds for the ruling

19

that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX.R.APP.P. 33.1(a)(1)(A). "The complaining party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale." *Pena v. State*, 285 S.W.3d 459, 463-64 (Tex.Crim.App. 2009). Moreover, the issue on appeal must comport with the objection made at trial. *See Clark v. State,* 365 S.W.3d 333, 339 (Tex.Crim.App. 2012), *citing Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Crim.App. 1986). In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time. *Lankston,* 827 S.W.2d at 911.

Here, a relevance objection was certainly raised below, but Appellant's only mention of character evidence was a denial that *he* was generally seeking to bolster *his* own character.[9] There

---

[9] The relevant discussion below reads as follows:

> [Appellant's Counsel]: Yes. Your Honor, I would ask what the legal relevance is of -- of the school records? We're not contesting that she was a good student or anything. And it's a matter -- it's just not a contested issue in this case.
>
> THE COURT: What -- well, the records are her grades --
>
> [Prosecutor]: Correct.
>
> THE COURT: -- and absences and --
>
> [Prosecutor]: Correct.
>
> THE COURT: -- just regular files.
>
> [Prosecutor]: That's correct. And the relevance, I would argue, is the backward problem, then. That there's an argument that always can be made -- it's the same reason that the defense is about to put on everyone that they can think of to vouch for the defendant. There's going to be an argument made that a child, as we went through in voir dire, will make a false allegation of various reasons -- that they're doing poorly in school, that they're in trouble at school, that there's some sort of behavioral issue. And so we're offering the relevance to show that that is not -- if there's going to be an argument as to why she's making a false allegation, that that's not at play in this particular case. So I believe it's very relevant; otherwise, I'm going to object to relevance to almost the entire defendant's case when they want to put on that he's a good guy.

was not a specific objection that the school records improperly bolstered Y.L.'s character under Rule 404. We therefore agree that portion of the argument has not been preserved. We address the relevance objection that was asserted below, and further explain how even if the character objection was validly made, any error would be harmless.

### Application

The State contends that the school records were relevant to respond to the claim, raised in Appellant's opening statement, that Y.L. was not a credible witness. We agree.

Relevant evidence is generally admissible and irrelevant evidence is not. TEX.R.EVID. 402 ("Relevant evidence is admissible unless any of the following provides otherwise: the United States or Texas Constitution; a statute; these rules; or other rules prescribed under statutory authority. Irrelevant evidence is not admissible."). Relevant evidence is that which has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. TEX.R.EVID. 401. Evidence does not need to prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a "small nudge" toward proving or disproving a fact of consequence. *Stewart v. State*, 129 S.W.3d 93, 96 (Tex.Crim.App. 2004).

Appellant's opening statement foreshadowed his attack on Y.L.'s credibility. His attorney described Y.L.'s "latest reiteration of the accusation" and stated at the end of the case the jury would not find the allegation "credible." As we detail in the sufficiency challenge *infra*, this case was all about Y.L.'s credibility. The State urges that the attendance and grade records provide at

---

[Appellant's Counsel]: We're not putting on that he's a good guy, Your Honor. We're putting on -- to the character trait that's relevant to these proceedings; that he behaves appropriately around underage children.

. . . . . . . .

THE COURT: Well, we'll get to that when it's appropriate to argue that; but right now, with those records, I'm going to allow them as State's Exhibit -- we're talking about State's Exhibit 1?

21

least a "small nudge" towards showing Y.L. had no other reason--such as failing grades--to fabricate the story against Appellant. Once her credibility was raised, the State could offer evidence to rebut the likely motives for providing false or inaccurate testimony. A child's life often revolves around school. Dispelling unusual problems at school provided at least a small nudge towards dispelling a motive to fabricate or embellish.

## Harm

Even were we wrong in that regard, any error in admitting the school records would be harmless. An appellate court must disregard a non-constitutional error that does not affect a criminal defendant's "substantial rights." TEX.R.APP.P. 44.2(b); *Casey v. State*, 215 S.W.3d 870, 884-85 (Tex.Crim.App. 2007).[10] Under that rule, an appellate court may not reverse for non-constitutional error if the court, after examining the entire record, has a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Casey*, 215 S.W.3d at 884-85. In doing so, we consider (1) the character of the alleged error and how it might be connected to other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error. *Bagheri v. State*, 119 S.W.3d 755, 762-63 (Tex.Crim.App. 2003).

After examining the record here, we have a fair assurance that any error did not have a substantial and injurious effect, or influence, in determining the jury's verdict. Regarding the first factor, at the end of the day the school records that showed Y.L. was an average student with a eight some odd absences in a single school year. The State had already admitted through the

---

[10] The erroneous admission of evidence is ordinarily reviewed under the harmless error standard set forth in TEX.R.APP.P. 44.2(b) because they rarely rise to the level of constitutional error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex.Crim.App. 2018); *Bagheri v. State*, 119 S.W.3d 755, 762-63 (Tex.Crim.App. 2003). Appellant does not present any authority that the evidence at issue here implicates his constitutional rights.

testimony of the school counselor that Y.L. was an "average student . . . She was actually a good student." The counselor also testified Y.L. had no discipline or attendance problems. Appellant never explains how the school records are any more harmful than the unobjected to testimony covering the same subject. *See Crocker v. State*, 573 S.W.2d 190, 201 (Tex.Crim.App. 1978)(noting that "[i]t is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged"); *Suiters v. State*, No. 08-11-00048-CR, 2012 WL 4393053, at *6 (Tex.App.--El Paso Sept. 26, 2012, pet. ref'd)(not designated for publication)("A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling."); *Castruita v. State*, 584 S.W.3d 88, 107-08 (Tex.App.--El Paso 2018, pet. ref'd)(same).

The other factors also weigh against Appellant. Y.L.'s testimony was the predominate evidence supporting the verdict. The primary corroboration of her testimony came from her mother, Ms. Monty, and Peak Behavioral records. The school records themselves never mentioned the incident, and never directly comment on Y.L.'s character. They were only briefly mentioned in the State's closing. Any error in the admission of the records was harmless. We overrule Issue Four.

## SUFFICIENCY OF THE EVIDENCE

Finally, Appellant challenges the legal sufficiency of the evidence to support the conviction. We start with our standard of review.

### Standard of Review

Evidence is legally sufficient when, viewed in the light most favorable to the verdict, *any* rational jury could have found the essential elements of the offense beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010)(establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

The jury is the sole judge of credibility and the weight attached to the testimony of each witness. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014). It is the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 319. The jury also may choose to believe or disbelieve that testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008); *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref'd). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; *see also Jackson*, 443 U.S. at 319.

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs*, 434 S.W.3d at 170; *Carrizales v. State*, 414 S.W.3d 737, 742 n.20 (Tex.Crim.App. 2013). Each fact need not point directly and independently to the guilt of the defendant, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Dobbs*, 434 S.W.3d at 170.

We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). However, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex.Crim.App. 1988). Instead, "we test the evidence to see if it is at least conclusive enough for

24

a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.*, *citing Jackson*, 443 U.S. at 318.

### The State's Burden

We begin with what the State needed to prove by measuring the evidence against the elements of the offense as defined in a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009). A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor and the child-victim is under fourteen years' of age. TEX.PENAL CODE ANN. § 22.021(a). A person commits the offense of indecency with a child if they engage in sexual contact with a child who is younger than seventeen and not their spouse. *See* TEX.PENAL CODE ANN. § 21.11(a), (b-1). "Sexual contact" is any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child with intent to arouse or gratify the sexual desire of any person. *See* TEX.PENAL CODE ANN. § 21.11(c)(1). The defendant's intent to gratify or arouse sexual desire may be inferred through defendant's conduct. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex.Crim.App. 1981).

### Application

The ultimate decision in this case came down to reconciling the testimony of Y.L., Michelle L., and Appellant, who testified in his own defense. Appellant denied that he ever did anything inappropriate around Y.L. He denied committing the indicted offense. He agreed that he moved out of the house but did so because he suspected that Michelle was being unfaithful to him. He is part of a large family, and four family members testified that Appellant had often been around children and they opined that he acts appropriately and morally around children. They testified that he has the same reputation in the relevant community.

25

Appellant's counsel also developed several inconsistencies between Y.L.'s testimony and a previous statement that she gave the police in 2013; we recount some of those. When the police interviewed Y.L. she said Appellant came out of the bathroom in his boxers and pulled out his penis. At trial, she testified that Appellant unzipped his jeans before forcing her to engage in oral sex. When confronted with this discrepancy at trial, Y.L. concedes Appellant may have been in boxers but then put jeans on. In her police statement, Y.L. claimed she learned that her mother and sisters were at the store by calling on a cell phone. At trial, she conceded she did not have a cell phone at that time. In her police statement, Y.L. related that Appellant told her he would not give her "piggyback rides" anymore if she did not engage in oral sex. At trial, she denied this ever happened. Her statement to the police did not mention the additional allegations about Appellant exposing himself to her.

Appellant's counsel also developed inconsistencies with the initial out-cry. Michelle testified that on hearing the initial out-cry in 2011, she told Appellant to leave the house. In Michelle's statement to the police, however, she said Appellant moved out saying he "can't do this anymore" and nothing about her throwing him out. While Y.L. testified that the initial outcry came about while mother and daughter were watching a scene in a movie, Michelle did not recall anything about a movie. Y.L. made a subsequent outcry to her mother, when Appellant later came to the house to take everyone out to dinner and Y.L. locked herself in the bathroom. At that time, according to the mother's police statement, Y.L. only said that Appellant had "held" her, and not that he had touched her. Later still, after Y.L. had talked to the school counselor, Y.L. told her mother that Appellant "made me touch him."

Finally, Appellant's counsel attacked Y.L.'s credibility. Y.L. herself admitted she resented Appellant moving into the house on the heels of her biological father leaving. In the Peak

26

Behavioral records, Y.L. made statements about wanting validation of these events from her mother. Those records also note that Y.L. was having auditory hallucinations.

Undoubtedly, Appellant put on a capable defense. And salient as these arguments might be, we are constrained by our standard of review to reject them. The thrust of Appellant's argument is embodied from this sentence in his brief: "[Y.L.] and [Michelle] failed as credible witnesses because they impeached and contradicted each other's testimony." The jury, however, is tasked with credibility determinations. *Dobbs*, 434 S.W.3d at 170; *Lancon*, 253 S.W.3d at 707; *Belton*, 900 S.W.2d at 897. They had to decide whether these discrepancies undermined the core of Y.L.'s allegation, or whether they were trivial, explained by the lapse in time, or innocent foibles of memory. The jury had to decide if Y.L.'s depression and other mental issues undermined her claim of abuse or resulted from it.

Appellant cites us to no controlling authority under the *Jackson v. Virginia* legal sufficiency standard that permits a court to second guess a credibility determination based on testimonial inconsistencies.[11] Moreover, by statute, a jury may convict on the testimony of a child victim alone. TEX.CODE CRIM.PROC.ANN. art. 38.07; *Ryder v. State*, 514 S.W.3d 391, 396 (Tex.App.--Amarillo 2017, pet. ref'd); *Tucker v. State*, 456 S.W.3d 194, 208 (Tex.App.--San Antonio 2014, pet ref'd); *Soto v. State*, 267 S.W.3d 327, 332 (Tex.App.--Corpus Christi 2008, no pet.). Resolving the credibility determinations in favor of the verdict, Y.L. testified to each of the elements of the underlying offenses. And as the Texas Court of Criminal Appeals said in a pre-*Booker* case, "Direct evidence of 'X' fact is always legally sufficient to support a finding of 'X' fact." *Goodman v. State*, 66 S.W.3d 283, 286 (Tex.Crim.App. 2001). Thus, looking at all of the evidence in the light most favorable to the verdict, we conclude there was evidence from which a

---

[11] He does cite to some pre-*Brooks* cases under the now rejected factual insufficiency standard. Those cases, however, are no longer applicable to our standard of review.

27

rational fact finder could have found beyond a reasonable doubt that Appellant had committed each of the four counts of indecency with a child by contact.  We overrule Issue Five and affirm the judgments of conviction below.


November 25, 2019

ANN CRAWFORD McCLURE, Senior Judge

Before Rodriguez, J., Palafox, J., and McClure, Senior Judge
McClure, Senior Judge (Sitting by Assignment)

(Do Not Publish)